```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
   IRIS MOLINA,                                             :
                                   Plaintiff,               :
                                                            :   20 Civ. 10993 (LGS)
                     -against-                              :
                                                            :   OPINION & ORDER
   HARVARD MAINTENANCE,                                     :
                                                            :
                                   Defendant.               :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendant Harvard Maintenance, Inc., moves pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4, and the National Labor Relations Act, 29 U.S.C. § 151 et seq., for an order dismissing the Complaint in its entirety, or in the alternative, staying proceedings, in favor of arbitration. For the reasons stated below, this action is stayed pending arbitration of Plaintiff's claims.

**I.    BACKGROUND**

The following facts are taken from the Complaint and the parties' submissions on this motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Plaintiff worked for Defendant in New York, New York, from April 2013 to November 2018 as a housekeeper. On January 2, 2020, Plaintiff filed a charge of employment discrimination and retaliation based on national origin and gender with the Equal Opportunity Employment Commission ("EEOC"). The EEOC issued a right to sue letter on November 13, 2020. Plaintiff filed this action on December 29, 2020, asserting claims under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII") and (2) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").

Plaintiff is a member of a union, SEIU Local 32BJ (the "Union"). The Union negotiated a collective bargaining agreement -- the 2016 New York City Independent Contractors Agreement ("CBA") -- between itself and Defendant, which was in effect at the relevant time. Article XIII of the CBA ("No Discrimination Clause") provides:

> 30. **NO DISCRIMINATION**. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, sexual orientation, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, 42 U.S.C. § 1981, the Family Medical Leave Act, the New York City Human Rights Code or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

Article VI, Paragraph 1 of the CBA (the "Arbitration Clause") provides for arbitration of disputes arising under the CBA:

> There shall at all times be a Contract Arbitrator to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate before him/her under the terms of this Agreement.

Article VI identifies the Contract Arbitrator as the "Office of the Contract Arbitrator-Building Service Industry."

Plaintiff complained to Defendant about hostile, abusive and discriminatory conduct of two security guards, and had her son come to the workplace to make similar complaints on her behalf. After she was terminated, Plaintiff attempted to have the Union address her claims against Defendant. Plaintiff complained to the Union of discrimination and harassment in the workplace, and that she was fired in retaliation for complaining. On December 17, 2018, the Union sent a letter to Defendant informing it of Plaintiff's complaint. On May 5, 2019, the Union sent another letter requesting that the harassment cease and desist. The Union spoke with

Plaintiff in a brief phone call and inquired why Plaintiff's son had come to the workplace but did not ask for any details about the harassment or discrimination. On June 4, 2020, the Union sent a letter to Plaintiff stating that her "complaint lacks sufficient merit for the Union to be likely to prevail in arbitration." Following the Union's failure to bring her claims to arbitration, Plaintiff commenced this action on December 23, 2020.

## II.     STANDARD

"The FAA embodies a national policy favoring enforcement of arbitration agreements founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).

Prior to compelling arbitration, the district court must first determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement. *Id.* In evaluating whether the parties have entered into a valid arbitration agreement and their intent, the court must "apply ordinary state-law principles that govern the formation of contracts." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1920)).

Court proceedings must be stayed once the district court is "satisfied that the parties have agreed in writing to arbitrate *that dispute*." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (emphasis in original). In deciding this issue, courts apply a "standard similar to that applicable for a motion for summary judgment." *Id.* at 179-80. Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings,

depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.* at 180. "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

### III. DISCUSSION

#### a. Agreement to Arbitrate Claims at Issue

The Union entered into a valid arbitration agreement with Defendant, Plaintiff's claims fall within its scope, and Plaintiff is bound by that agreement. As further explained below, Defendant's motion to compel arbitration is granted.

Here, Plaintiff does not dispute that she is subject to the CBA between the Union and Defendant, nor does she dispute that her claims fall within the scope of claims intended to be arbitrated. Instead, Plaintiff argues that she is entitled to litigate here in the district court and that the arbitration agreement is invalid as applied to her. Plaintiff's argument is that the agreement impermissibly waives her right to be heard in any forum because it requires arbitration, but at the same time permits the Union to block her from arbitrating her claims. This is contrary to the plain meaning of the CBA.

The CBA evinces the unambiguous intent to arbitrate Plaintiff's dispute. Under New York contract law,[1] the following principles are relevant to interpreting an arbitration agreement: (1) a contract must be read as a whole to ensure undue emphasis is not placed upon particular

---

[1] New York substantive law governs the validity of the arbitration clause at issue because the parties' submissions assume that it does. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]") (quoting *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)).

words or phrases; (2) a court should construe a contractual agreement so as to give full meaning and effect to its material provisions; (3) a reading of the contract should not render any portion meaningless and (4) the contract should be read as a whole, with every part interpreted with reference to the whole. *Wilson v. PBM, LLC*, 140 N.Y.S.3d 276, 283 (2d Dep't 2021). "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Id.* Applying these principles, Plaintiff's dispute falls with the scope of claims intended to be arbitrated under the CBA.

The CBA expressly compels the arbitration of Plaintiff's claims. Plaintiff alleges violations of Title VII and the NYCHRL. The CBA's No Discrimination Clause states that "claims made pursuant to Title VII of the Civil Rights Act . . . the New York City Human Rights Code, or any other similar laws, rules or regulations . . . shall be subject to the grievance and arbitration procedure." The CBA's Arbitration Clause provides that there will be "a Contract Arbitrator to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate before him/her under the terms of this Agreement." These clauses explicitly and unambiguously reflect an intention for Plaintiff's discrimination claims to be submitted to arbitration.

Plaintiff's contention that the Arbitration Clause is invalid because the Union refused to bring her claims to arbitration is unavailing. Plaintiff argues that (1) individual claims are not subject to arbitration under the CBA and (2) there is no process for arbitrating individual claims, so Plaintiff's claims should not be subject to arbitration. Both of these arguments are unconvincing.

### b. Arbitration of Individual Claims Under the CBA

Plaintiff incorrectly overreads Article VI to exclude the submission of her claims to arbitration. It is true that if the "terms of an arbitration agreement serve[] to act as a prospective waiver of a party's right to pursue statutory remedies . . ., [a court] would have little hesitation in condemning the agreement as against public policy." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)) (internal quotation marks omitted); *accord Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 405 (S.D.N.Y. 2021). However, Plaintiff's obligation to arbitrate is not waived because the CBA does not bar individuals from bringing claims to arbitration, and nothing prevents Plaintiff from vindicating her statutory rights in arbitration with Defendant by submitting her claims to the Contract Arbitrator.

To argue that individual claims are not arbitrable, Plaintiff misinterprets Article VI of the CBA, which states that "All Union claims are brought by the Union alone, and no individual shall have the right to compromise or settle any claim without the written permission of the Union." Plaintiff interprets this provision to mean that only the Union can bring claims to arbitration. Plaintiff's interpretation is incorrect; there is a distinction between Article VI and the No Discrimination Clause. The Article VI provision refers to "All Union claims" whereas the No Discrimination Clause encompasses all discrimination claims. "Union claims" plainly refers to claims that arise under the CBA that the Union elects to pursue, but it does not mean that all claims are Union claims. *See Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 411 (S.D.N.Y. 2016) (interpreting the same language in a CBA to mean that "Union claims" are those "brought by and supported by the Union" and not those "brought by individuals alone"). Plaintiff's claims are not "Union claims" subject to the above provision in Article VI, but still

6

fall within the scope of the No Discrimination and Arbitration Clauses, which explicitly compel the arbitration of all discrimination claims. This interpretation reads the CBA as a whole and construes it in accord with the parties' intent. *See Wilson*, 140 N.Y.S.3d at 283.

### c. The Absence of a Reference to Arbitration of Individual Claims

The CBA does not preclude Plaintiff from bringing her claims to arbitration, even though the CBA does not explicitly mention arbitration of individual claims. Accordingly, the CBA does not act as a "prospective waiver" of her right to statutory remedies. *See Ragone*, 595 F.3d at 125. There is a split in this District as to whether similar language in collective bargaining agreements bars an individual from bringing to arbitration claims that a Union has declined to bring. *Compare Gildea v. BLDG Mgmt.*, No. 10 Civ. 3347, 2011 WL 4343464, at *5 (S.D.N.Y. Aug. 16, 2011) (granting motion to compel arbitration of claims brought by an individual even though the collective bargaining agreement was silent on the procedure), *and Begonja*, 159 F. Supp. 3d at 411 (same), *with Morris v. Temco Service Indus. Inc.*, No. 09 Civ. 6194, 2010 WL 3291810, at *6 (S.D.N.Y. Aug. 12, 2010) (denying motion to compel arbitration because the clause at issue amounted to a substantive waiver of rights since the agreement did not contain an alternative procedure for the employee to pursue claims independently if the union declined to arbitrate), *and Kravar v. Triangle Servs., Inc.*, No. 06 Civ. 7858, 2009 WL 1392595, at *2 (S.D.N.Y. May 19, 2009) (holding arbitration clause unenforceable where parties did "not dispute that an individual union member does not have an unfettered right to demand arbitration of a discrimination claim; to do so, she must present claim to the union, which 'may' demand arbitration"). The reasoning in *Gildea* and *Begonja* is persuasive for three reasons.

First, the CBA does not, on its face, bar individuals from bringing claims to arbitration if the Union declines to bring them itself. *See Gildea*, 2011 WL 4343464, at *5; *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15 Civ. 2030, 2016 WL 3571387, at *5 (S.D.N.Y. June 27, 2016) (noting

7

that nothing in the collective bargaining agreement prevented plaintiff from arbitrating claims). The CBA provides procedures for arbitration, such as the division of the fees for the arbitrator between the Union and Employer, and lists the appropriate arbitrator, but it does not state that only the Union can bring claims to arbitration. Plaintiff has not shown that the CBA precludes her from arbitrating her claims individually before the Contract Arbitrator or that, upon attempting to arbitrate her claims without the Union, Plaintiff was prevented from doing so. *See Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 249-51 (E.D.N.Y. 2016) (compelling arbitration of plaintiff's claims because plaintiff had not exhausted grievance and arbitration procedure by attempting to bring claims to arbitration without the union).

Second, the absence of a defined procedure for the arbitration of individual claims does not preclude arbitration. Plaintiff points to similar CBA agreements that include gap-filling agreements providing procedures for arbitrating individual claims to argue that the lack of a gap-filling agreement here means the CBA precludes arbitration of individual claims. *See, e.g., Lobban v. Cromwell Towers Apartments, Ltd.*, 345 F. Supp. 3d 334, 348-49 (S.D.N.Y. 2018) (describing a supplemental agreement between the Union and the RAB that identified procedures for individuals to bring their claims to arbitration without Union representation). The gap-filling measures merely clarify an individual's obligation to arbitrate under the CBA; they do not add an additional obligation that was not present prior to the gap-filling agreement. *Id.*

Third, the presumption of arbitrability under the FAA supports finding that Plaintiff's claims are subject to arbitration. The presumption serves as a "background principle of interpretation once it has been established that the parties entered into an agreement to arbitrate." *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 421 (S.D.N.Y. 2012); *see Kamin Health LLC v. Halperin*, No. 20 Civ. 5574, 2021 WL 964949, at *5 (E.D.N.Y. Mar.

8

15, 2021). Here, as discussed above, Plaintiff's Union and employer entered into a valid arbitration agreement under the CBA that covers Plaintiff's claims.

**IV.     Stay Pending Arbitration**

"[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015); *accord Rost v. Liberty Coca-Cola Beverages, LLC*, No. 20 Civ. 10559, 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021). Accordingly, because all of the claims brought by Plaintiff are subject to arbitration, this action is stayed pending arbitration.

**V.     CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration is **GRANTED** and this case is **STAYED**. If Plaintiff wishes to proceed with her claims, she is directed to submit to the grievance and arbitration procedures contemplated by Article VI of the CBA. If Plaintiff finds that she is precluded from submitting her claims to arbitration, Plaintiff may seek further redress from this Court. The Civil Case Management Plan and Scheduling Order at Docket No. 31 is vacated. **Sixty days** after the date of this Opinion and Order, and every **sixty days** thereafter, the parties shall file a joint letter apprising the Court of the status of any arbitration. The parties are directed to inform the Court promptly of any resolution of the arbitration proceedings or any other event that would affect the stay of this matter.

The Clerk of Court is respectfully directed to close Docket Entry No. 38.

Dated:  November 11, 2021
        New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE